IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN HAWK, | No. CIV S-04-0731-MCE-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| ALAMEIDA, et al., | |
| Defendants. | |
| _____/ | |

    Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss (Doc. 42). Defendants argue that all but two of plaintiff's claims are subject to dismissal either because plaintiff failed to exhaust administrative remedies prior to bringing suit or because plaintiff fails to state a claim upon which relief can be granted.

/ / /

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

This action proceeds on plaintiff's third amended complaint, filed on December 30, 2005. Plaintiff names the following as defendants: Alameida; Runnels; Cook; Ingwerson; Howard; Peery; Swartz; Correa; and Chettam. Defendants Alameida and Runnels are supervisory personnel. Defendant Howard is deceased and has been dismissed from the action. Of the remaining named defendants, the moving defendants are: Alameida, Correa, Ingwerson, Peery, Runnels, and Swartz.[1]

Plaintiff states that, on October 10, 2002, he was issued a "general counseling chrono" indicating that he was not in compliance with the prison's grooming regulations. Plaintiff claims that this "chrono" contained false information. The same day, plaintiff filed an inmate grievance concerning the allegedly false information in the "chrono," and asked that the "chrono" be removed from his file because the grooming regulations violate his religious beliefs. Plaintiff states that, on October 14, 2002, he spoke with defendant Cook regarding the "chrono." Plaintiff states that, during this conversation, he informed defendant Cook about a court injunction entered in favor of prisoners at California State Prison, Solano, which forbids enforcement of the grooming regulations. Plaintiff claims that defendant Cook stated that no change in policy would be considered until and unless an injunction was issued in favor of inmates at plaintiff's institution (High Desert State Prison).

According to plaintiff, on October 16, 2002, he was charged with a rules violation based on non-compliance with the grooming standards. Plaintiff reported to the "program office" on October 26, 2002, for a hearing on the rules violation. When asked for reasons why he refused to comply with the grooming regulations, plaintiff stated the following: (1) he has a sincere belief, founded in Native American religious practices, barring him from cutting his hair

---

[1] Defendants Cook and Chettam have not been served. Process directed to them was returned unexecuted on August 31, 2006, and the court has issued an order directing plaintiff to seek additional information necessary to identify these defendants.

2

unless a relative dies; (2) grooming tools supplied to prisoners are causing injuries, including drawing blood, which exposes inmates to blood-borne pathogens; (3) prison barbers were not adequately trained in blood-borne pathogens and how to prevent infection; (4) the injunction issued in favor of prisoners at the California State Prison, Solano, barred enforcement of the grooming regulations; (5) the grooming regulations were not being applied equally among prisoners; and (6) the prison has an obligation to protect inmates from blood-borne pathogens and to allow for religious freedom.  Plaintiff states that he was found "not guilty" of the rules violation, which was dismissed.  Plaintiff indicates that defendant Cook approved this result.

Next, plaintiff claims that, on October 26, 2002, a fight broke out among white and Asian inmates, which groups were subsequently placed on lock-down.  Plaintiff states that, even though he is a Native American, he was also placed on lock-down because his cellmate is white.  Plaintiff alleges that he was told by defendant Correa that, as long as he was housed with a white inmate, he would also be subject to the lock-down.  Plaintiff states that defendant Correa told him that this directive came from defendants Perry, Cook, and Runnels.  Plaintiff alleges that he learned from another Native American inmate that, in fact, plaintiff was being singled out because he refused to comply with the grooming regulations.  Plaintiff asserts that this other inmate also observed that other Native American inmates housed with white inmates were not on lock-down, and that only plaintiff was being treated differently.  Plaintiff states that he filed an inmate grievance concerning his lock-down, but that prison officials never responded.

Plaintiff alleges that, on October 29, 2002, defendant Swartz issued another rules violation report against plaintiff based on the grooming regulations.  Plaintiff claims that, as with the prior rules violation report, this one was also based on false information.  A hearing on the rules violation was conducted by defendant Howard on November 10, 2002.  Plaintiff states that the prison staff assigned to assist him with the hearing failed to obtain necessary documents that plaintiff had requested.  Plaintiff also states that the witnesses he had requested were not present at the hearing.  After providing defendant Howard with the same responses he gave at the prior

rules violation hearing, defendant Howard found plaintiff guilty of the rules violation. Plaintiff was punished by having his recreational time taken away.

Plaintiff claims that, on November 11, 2002, he was called to a meeting with defendants Swartz and Chettam about plaintiff's refusal to comply with the grooming regulations. Plaintiff continued to refuse to comply with the grooming regulations and plaintiff was charged with yet another rules violation based on his refusal to cut his hair. Plaintiff states that, on January 3, 2003, the rules violation was re-heard by defendant Ingwerson. Plaintiff states that he was permitted for the first time to call witnesses and present evidence, though plaintiff claims that he was not allowed to present evidence concerning ineffectiveness of disinfectants used on barber equipment. Plaintiff claims that he was again found guilty of a rules violation and that he lost 30 days good-time credits and was denied yard time for 30 days as a result.

As to defendant Alameida, plaintiff claims that he informed him of the foregoing in the form in inmate appeals, but that defendant Alameida did nothing.

Plaintiff seeks a determination that the grooming regulations are unconstitutional, and an injunction barring enforcement of the grooming regulations. Plaintiff also seeks compensatory and punitive damages for various alleged violations of his civil rights.

## II. STANDARDS FOR MOTION TO DISMISS

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In considering a motion to dismiss under this standard, the court must accept all allegations of material fact as true and must construe them in the light most favorable to the plaintiff. See Hospital Bldg. Co. v. Rex Hospital Trustees, 425

1  U.S. 738, 740 (1976); see also Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).

2  All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v.

3  McKeithen, 395 U.S. 411, 421 (1969).  Pro se pleadings are held to a less stringent standard than

4  those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).

5        To determine whether a complaint states a claim upon which relief can be

6  granted, the court generally may not consider materials outside the complaint and pleadings.  See

7  Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th

8  Cir. 1994).  The court may, however, consider: (1) documents whose contents are alleged in or

9  attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454;

10 (2) documents whose authenticity is not in question, and upon which the complaint necessarily

11 lies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668,

12 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice,

13 see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson

14 v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).

15       Finally, leave to amend a deficient complaint must be granted ". . . [u]nless it is

16 absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corrections, 66

17 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th

18 Cir. 2000) (en banc).

19       A motion to dismiss for lack of exhaustion of administrative remedies is properly

20 the subject of an unenumerated motion under Federal Rule of Civil Procedure 12(b).  See Wyatt

21 v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "In deciding a motion to dismiss for failure to

22 exhaust non-judicial remedies, the court may look beyond the pleading and decide disputed

23 issues of fact."  Id. at 1119-20.  If the court concludes that administrative remedies have not been

24 exhausted, the unexhausted claim should be dismissed without prejudice.  See id. at 1120.

25 ///

26 ///

### III.  DISCUSSION

Plaintiff, who is a Native American, raises the following claims: (1) prison grooming regulations requiring him to cut his hair violate his First Amendment right to free exercise of religion; (2) prison grooming regulations are not being enforced equally, in violation of his equal protection rights; (3) he was placed on lock-down in retaliation for refusing to cut his hair; (4) prison barber equipment exposed him to an impermissible health risk in violation of the Eighth Amendment; and (5) he was not provided the opportunity to present witnesses or evidence at his disciplinary hearings in violation of his due process rights.  In addition, plaintiff asserts that defendants Runnels and Alameida are liable supervisory personnel.

Defendants argue that plaintiff's first claim is foreclosed as a matter of law and that, in any event, they are entitled to qualified immunity on this claim.  Defendants argue that plaintiff has failed to allege sufficient facts to state an equal protection claim.  As to plaintiff's retaliation claim, defendants argue that plaintiff failed to exhaust administrative remedies.  And, as to defendants Runnels and Alameida, defendants argue that plaintiff has not alleged sufficient facts to show supervisory liability.  Defendants do not challenge the sufficiency of plaintiff's Eighth Amendment or due process claims.

### A.  Free Exercise Claim

Defendants argue that plaintiff's free exercise claim that enforcement of grooming regulations requiring plaintiff to cut his hair is foreclosed as a matter of law. Defendants also argue that, in any event, they are entitled to qualified immunity on this claim.

In Henderson v. Terhune, 379 F.3d 709 (9th Cir. 2004), a case brought by a Native American inmate, the court held that the very same grooming regulation at issue in this case does not violate prisoners' First Amendment free exercise rights.  See id. at 715-16. Specifically, the court held that the regulation is related to the legitimate penological interests in preventing inmates from changing their appearance quickly, hiding contraband in their hair, and displaying gang-related hair styles.  See id. at 713-14.  Because Henderson's claim was based

solely on the First Amendment, the court did not reach the question whether the grooming regulations violate the Religious Land Use & Institutionalized Persons Act ("RLUIPA"). See id. at 7125 n.1. That issue was addressed later in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005). In Warsoldier, the Ninth Circuit concluded that the grooming regulations violated RLUIPA's more stringent test. See id. at 1002.

In this case, plaintiff claims that the grooming regulations are "unconstitutional." Because RLUIPA is an act of Congress and not part of the Constitution, the court concludes that plaintiff's challenge to the grooming regulations is brought solely under the First Amendment. Therefore, Henderson controls and plaintiff's claim is foreclosed as a matter of law. This claim should be dismissed with prejudice. Because the claim is foreclosed as a matter of law, it is not necessary to address defendants' argument that they are entitled to qualified immunity.

### B. Equal Protection Claim

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins.

Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

To the extent plaintiff's complaint raises an equal protection claim, it must be based on plaintiff's conclusory allegation that the grooming regulations are not being enforced equally. It is possible that this relates to plaintiff's contention that he was told that, even though the grooming regulations were not being enforced at another prison, they would continue to be enforced at his prison. Defendants argue that plaintiff has not alleged sufficient facts to state an equal protection claim. The court agrees. Specifically, plaintiff has not alleged intentional discrimination against plaintiff based race or religion, nor has he alleged that the alleged disparate treatment does not relate to a legitimate penological interest.

Because it is possible that these defects can be cured through amendment, plaintiff should be granted leave to amend.

**C.    Retaliation Claim**

Plaintiff claims that, on October 26, 2002, he was placed on lock-down status in retaliation for refusing to cut his hair. Defendants argue that plaintiff failed to exhaust his administrative remedies as to this claim prior to bringing suit.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court recently addressed the exhaustion requirement in Jones v. Bock, 127 S.Ct. 910 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not

necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.  The Supreme Court also held in Woodford v. Ngo, 126 S.Ct. 2378, 2385-88 (2006), that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules and that partial compliance is not enough.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.7 of Title 15 of the California Code of Regulations.  These regulations require the prisoner to proceed through several levels of appeal: (1) informal resolution; (2) formal appeal; (3) second level appeal to institution head; (4) third level appeal to the director of the California Department of Corrections and Rehabilitation.  A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy.  See Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). Departmental appeals coordinators may summarily deny a prisoner's untimely administrative appeal.  See Cal. Code Regs. tit. 15, §§ 3084.3(c)(6) and 3084.6(c).

In support of their argument, defendants provide the court with the declaration of N. Grannis, the chief of the Inmate Appeals Branch, who states that plaintiff never filed a third level appeal as to the October 26, 2002, lock-down.  Given this record, the court concludes that plaintiff failed to exhaust administrative remedies.  Therefore, plaintiff's retaliation claim should be dismissed without prejudice.

**D.     Supervisory Liability**

Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

1 violations of subordinates if the supervisor participated in or directed the violations, or had
2 actual knowledge of the violations and failed to act to prevent them. See id.  When a defendant
3 holds a supervisory position, the causal link between him and the claimed constitutional
4 violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);
5 Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations
6 concerning the involvement of supervisory personnel in civil rights violations are not sufficient.
7 See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

8        Defendants argue that plaintiff's claims against supervisory defendants Runnels
9 and Alameida are based on his assertion that they were aware of the alleged constitutional
10 violations by way of his prison grievances. Defendants assert that this could only constitute
11 constructive notice and that, absent facts showing actual knowledge of the alleged constitutional
12 violations, plaintiff cannot state a claim against them. The court agrees with this argument as to
13 defendant Alameida, but not as to defendant Runnels.

14        It is clear from the complaint that plaintiff's assertion of defendant Alameida's
15 liability is based on his allegation that defendant Runnels knew of the alleged violations because
16 he filed inmate grievances concerning them. However, as outlined above, supervisory liability
17 requires actual knowledge. Plaintiff has not alleged any facts which would demonstrate that
18 defendant Alameida had actual knowledge of the conduct of the other defendants. Absent such
19 factual allegations, defendants are correct that plaintiff does not state a claim against defendant
20 Alameida.

21        As to defendant Runnels, however, the court finds that the operative complaint is
22 sufficient to state a claim. Plaintiff states that a fight broke out among Asian and white inmates
23 and that these groups were placed on lock-down. He also states that, even though he is a Native
24 American, he was also placed on lock-down as a result of this fight. He further alleges that he
25 was told by another Native American inmate that he was being singled out because he refused to
26 comply with the grooming regulations. Finally, plaintiff alleges that this "directive" came from,

among others, defendant Runnels. Therefore, plaintiff is claiming that defendant Runnels directed that plaintiff be singled out for lock-down status because he refused to cut his hair. This allegation is sufficient to show that defendant Runnels had actual knowledge of a constitutional violation. Moreover, the court concludes that the allegation is not conclusory because it is supported by the alleged statement from the other inmate, which the court must assume to be true.

However, even though the court concludes that the allegations as against defendant Runnels are sufficient in the context of showing the connection between a supervisory defendant and the alleged constitutional violation, plaintiff still cannot state a claim for relief against defendant Runnels. It is clear from plaintiff's allegations that his claim against defendant Runnels is based solely on the October 26, 2002, lock-down. In particular, plaintiff claims that the lock-down resulted from a directive from defendant Runnels. Because, as discussed above, plaintiff failed to exhaust his administrative remedies as to his retaliation claim, he cannot state a retaliation claim against any defendant. Therefore, defendant Runnels should be dismissed from this action.

Because the pleading defect as to defendant Alameida can conceivably be cured by amendment to allege additional facts, plaintiff should be granted leave to amend prior to dismissal of defendant Alameida.

### IV.  CONCLUSION

The court finds that plaintiff's free exercise claim is foreclosed as a matter of law under <u>Henderson</u>. This claim should, therefore, be dismissed with prejudice. The court also finds that plaintiff failed to exhaust available administrative remedies as to his retaliation claim. This claim, therefore, should be dismissed without prejudice. As to plaintiff's equal protection claim, the court finds the current allegations deficient but subject to amendment. Therefore, plaintiff should be granted leave to amend as to this claim. Because plaintiff's claim against

1  defendant Runnels is based on his retaliation claim, defendant Runnels should be dismissed from
2  this action.  Finally, the allegations as against defendant Alameida are deficient but subject to
3  amendment.
4          Because this case has been pending for some time, the court recommends that the
5  scope of permissible amendment to the complaint be strictly prescribed.  Specifically, plaintiff's
6  amendment should be limited to the three remaining claims – the equal protection claim, the due
7  process claim, and the Eighth Amendment claim.  In addition, plaintiff should be precluded from
8  naming any new defendants.
9          Based on the foregoing, the undersigned recommends that:
10         1.      Defendants' motion to dismiss be granted in part and denied in part, as
11 outlined herein;
12         2.      Defendant Runnels be dismissed from the action;
13         3.      Plaintiff's free exercise claim be dismissed with prejudice;
14         4.      Plaintiff's retaliation claim be dismissed without prejudice;
15         5.      Plaintiff's equal protection claim be dismissed with leave to amend; and
16         6.      Plaintiff be required to file a fourth amended complaint consistent with the
17 scope outlined above.
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  April 17, 2007.

                                                                            _____
                                                                            **CRAIG M. KELLISON**
                                                                            UNITED STATES MAGISTRATE JUDGE